## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**SEAN M. DONAHUE,**                                                :

    **Plaintiff**                                   :          **CIVIL ACTION NO. 3:14-1351**

    **v.**                                          :                    **(MANNION, D.J.)**
                                                                                **(MEHALCHICK, M.J.)**
**CITY OF HAZLETON, *et al.*,**                    :

    **Defendants**                                  :

## <u>MEMORANDUM</u>

Pending before the court is the April 13, 2020 report of Judge Mehalchick, (Doc. 105), which recommends that defendants' motion for summary judgment, (Doc. 80), be granted in part, and denied in part. Specifically, it is recommended that defendants' motion be denied regarding plaintiff's 4th Amendment excessive force claim relating to the aiming of defendants' firearms at plaintiff after he was arrested and handcuffed, and that the motion be denied regarding this claim against the City of Hazelton based on municipal liability. It is recommended that defendants' motion be granted with respect to all of the plaintiff's other claims in Counts I-IV of his complaint. Further, it is recommended that plaintiff's motions to compel, (Docs. 72 & 75), and his Rule 11 motion to impose sanctions on defense counsel, (Doc. 90), be denied.

After granting the motions for extensions of time filed by both parties to object to Judge Mehalchick's report, defendants and plaintiff filed their respective objections on April 27, 2020. (Docs. 109 & 111). Plaintiff also filed a reply brief to defendants' objections on May 21, 2020, with attached Exhibits, including the police Criminal Complaint and Affidavit of probable cause filed against him, the August 2012 Search Warrant and Application for his house, and the Information charging him in the underlying criminal case filed against him. (Docs. 123 & 123-1). Plaintiff also submitted two of his Affidavits (numbers 3 & 4) with attached copies of transcripts from proceedings in his underlying state court criminal case and transcripts from depositions taken in the present case. (Docs. 125 & 126). The court has reviewed Judge Mehalchick's report, plaintiff's objections to it as well as defendants' objections and plaintiff's reply, and it will **ADOPT IN ITS ENTIRETY** the report and **GRANT** defendants' motion for summary judgment as to all claims except for the stated 4th Amendment excessive force claim against the individual defendants and against the City of Hazelton based on municipality liability. The objections of both parties to the report will be **OVERRULED**. Plaintiff's motions to compel and his motion for sanctions will be denied.

## I.      BACKGROUND[1]

Briefly, by way of background, on July 15, 2014, the plaintiff, Sean M. Donahue, filed, through counsel, the instant civil rights action pursuant to 42 U.S.C. §1983 alleging violations of his constitutional rights by the defendants in relation to events regarding his August 21, 2012 arrest, imprisonment and subsequent conviction.[2] (Doc. 1). The plaintiff is now proceeding *pro se* in this matter.

In particular, plaintiff's claims are as follows: Count I, 4th Amendment Excessive Force claims against all Defendants[3]; Count II, 4th Amendment Malicious Prosecution claim against all defendants; Count III, 5th and 14th Amendments Takings against all defendants; and Count IV, 1st Amendment Retaliation against all defendants. (Doc. 1, at 19-36). Plaintiff also asserts a municipal liability claim under Monell v. Dep't of Soc. Servs.

---

[1]Since the full background of this case is stated in Judge Mehalchick's report as well as the briefs of the parties and their statements of facts regarding defendants' dispositive motion, it shall not be fully repeated herein. As the report correctly notes, only the statement of facts and responses that are supported by citation to the evidence in the record were considered. *See* Local Rule 56.1, M.D.Pa. Additionally, the court will limit its discussion to information relevant to the objections of the parties to Judge Mehalchick's report.

[2]All of the defendants named in this case, as well as their positions, are stated in Judge Mehalchick's report and in footnote 8 below.

[3]As indicated in the report, Count I consists of two 4th Amendment excessive force claims, namely, a claim arising from use of SWAT-like team and a claim arising from aiming weapons at plaintiff after he was handcuffed.

of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018 (1978), against the City of Hazleton.

After the stay that was imposed by the court pending plaintiff's appeals of his state court conviction in his underlying criminal case was lifted on August 1, 2019, discovery ensued.[4]

During discovery, plaintiff filed his two motions to compel defendants to respond to his voluminous discovery requests. (Docs. 72 & 75).

After discovery was completed, defendants filed a motion for summary judgment on October 15, 2019, regarding all of plaintiff's claims against them. (Doc. 80). Defendants' motion was briefed by the parties and a statement of material facts was filed, as well as exhibits.

On October 30, 2019, plaintiff filed his Rule 11(c) motion for sanctions alleging numerous incidents of misconduct by defense counsel during the course of this case. (Doc. 90).

Judge Mehalchick issued her report on April 13, 2020 regarding all of the stated pending motions. (Doc. 105).

---

[4] Plaintiff was charged with: (1) harassment under 18 Pa.C.S. §2709(a)(3); and (2) making terroristic threats with intent to terrorize another under 18 Pa. C.S. §2706(a)(1). The first charge was dismissed and plaintiff was convicted of the second charge. The court takes judicial notice of the Dauphin County Court Criminal Docket in plaintiff's underlying criminal case, Commonwealth v. Donahue, No. CP-40-CR-0003501-2012 (Dauphin Cnty. Ct. Com. Pl.). *See also* plaintiff's Exhibits attached to his Doc. 123 reply brief.

On April 27, 2020, defendants filed their objections to the report and brief in support, (Docs. 109 & 110), claiming that the report erred only with respect to the recommendation that the individual defendants were not entitled to qualified immunity regarding plaintiff's 4th Amendment excessive force claim arising when defendants pointed their firearms at him after he was arrested and handcuffed, and with respect to the recommendation that plaintiff's municipal liability claim against the City of Hazelton regarding the aiming of weapons incident be allowed to proceed.

Also, on April 27, 2020, plaintiff filed his objections to the report claiming that the report erred with respect to all of its findings as to all of his claims except for his stated excessive force claim that was recommended to be allowed to proceed. Plaintiff also objects to the report's recommendations regarding his motions to compel and motion for sanctions. (Doc. 111). On May 5, 2020, plaintiff filed his brief in support of his objections. (Doc. 113).

On May 6, 2020, plaintiff filed a document styled as an amendment to his May 2, 2020 filing indicating that he did not receive copies of the defendants' objections to the report and brief in support, (Docs. 109 & 110), and he requested additional time to respond to them after defendants sent him their documents. (Doc. 115). Defendants concurred in plaintiff's request.

The court gave plaintiff additional time to respond to defendants' objections. Plaintiff filed his reply brief with Exhibits on May 21, 2020.[5] (Doc. 123).

## II.   STANDARD OF REVIEW[6]

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp. 2d 465, 469

---

[5]The plaintiff also filed a motion to exceed the page limitation with respect to his reply brief, (Doc. 122), and defendants opposed it. However, the court will grant the motion.

[6]Since Judge Mehalchick states the appropriate standards with respect to a summary judgment motion and with respect to a civil rights action under 42 U.S.C. §1983 in her report, the court will not repeat them herein.

(M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31."[A] Report and Recommendation does not have force of law unless and until the district court enters an order accepting or [not accepting] it." Garceran v. Morris County Prosecutors Office, 2015 WL 858106, *1 (D.N.J. Feb. 27, 2015) (citing United Steelworkers of Am. v. N.J. Zinc Co., Inc., 828 F.2d 1001, 1005 (3d Cir. 1987)).

## III.    DISCUSSION

The court will first address defendants' objections that Judge Mehalchick erred in her report to the extent that she recommends that their motion for summary judgment be denied since she found that defendants were not entitled to qualified immunity regarding plaintiff's 4th Amendment excessive force claim arising from the pointing of weapons at him while he was detained and handcuffed.

The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right [ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S.

603, 609(1999); Saucier v. Katz, 533 U.S. 194, 201–02 (2001). Qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). To determine whether the individual defendants are entitled to qualified immunity, the court must analyze two factors: 1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, 2) whether those rights were "clearly established" at the time of the incident. Pearson v. Callahan, 555 U.S. 223 (2009); *see also* Perez v. Borough of Berwick, 507 Fed.Appx. 186, 192 (3d Cir. 2012) ("To determine whether the individual officers are entitled to qualified immunity, the District Court [is] required to consider whether, under the factual scenario of this case, the officers were reasonable to believe that their actions did not violate the [plaintiff's] clearly established rights."); Taylor v. Barkes, 575 U.S. 822, 135 S.Ct. 2042, 2044 (2015) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.") (citation omitted).

Since Judge Mehalchick details the undisputed facts relevant to plaintiff's excessive force claims (Count I, first and second claims) in her report, (Doc. 105 at 2-4, 7-11), which are adopted, the court will not fully repeat them herein. Briefly, as the report states, plaintiff alleges that "Defendants initiated a SWAT-like raid of his home utilizing the Special

Operations Group ("SOG") and pointed 'various deadly weapons' at him while he was handcuffed, detained, and not resisting." (Doc. 105 at 7) (*See also* Doc. 1, ¶'s 112-130). The report correctly finds that only *de minimis* force was used on plaintiff during his arrest and that he was not physically injured, and that the defendants' use of a SWAT-type team with guns drawn in conducting the raid on plaintiff's home was reasonable under the circumstances involving plaintiff's threatening August 17, 2012 email to the Luzerne County District Attorney. As the report finds, "[plaintiff's] statements, coupled with the tone of [his] email as a whole, clearly communicated that Donahue may have posed a threat to officers entering his property and his invocation of the Second Amendment provided a significant probability that he would be armed", and that "Defendants' reasonable belief that Donahue posed a threat to their safety justified the use of a SWAT-like team." (Doc. 105 at 9; Doc. 123, attached Affidavit of probable cause).

However, the report concludes that the evidence is disputed as to whether defendant officers' use of their firearms which were drawn and aimed at plaintiff after he was handcuffed and posed no threat to them constituted excessive force. In fact, plaintiff states that there was "at least an hour of time for the gunpoint interrogation of the handcuffed, passive, non[-]resisting plaintiff who didn't attempt to flee", and he cites to hospital records to support his alleged time period. (Doc. 123 at 14-15). In their

objections, defendants take issue with the report's finding that they are not entitled to qualified immunity on the stated claim since "[they] [fail to] establish that they did not aim their weapons at Donahue while he was handcuffed and not resisting", and since "a reasonable jury could find that Defendants exerted excessive force upon Donahue after he was handcuffed [and being taken out of his house] [by pointing seven guns at him] thereby violating his rights under the Fourth Amendment." (Doc. 105 at 10).

The court concurs with the report that based on the disputed evidence as to whether plaintiff had seven guns pointed at him when he "was neither dangerous nor likely to flee", defendants are not entitled to qualified immunity at this time since "[i]t was clearly established by [Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 1995)] in 1995 that the use of a pointed gun could constitute excessive force, and that the complete absence of threat or possible escape rendered the use of force unreasonable." (Id. at 13-14).

In their objections, defendants point to their evidence to try and show that the facts are not disputed and that they did not continue to point their firearms at plaintiff after he was handcuffed. Defendants rely upon the deposition testimony of Officers Leonard and Coffman as to "the rationale for having guns drawn [on plaintiff] as well as how brief the entire encounter was from the time [plaintiff] was handcuffed until he was removed from [his house.]" However, defendants acknowledge that "neither officer was

questioned about Donahue's allegation in the Complaint about whether guns we[r]e pointed at him while he was being removed from the residence through the kitchen." While defendants concur with the report's finding that they did not violate plaintiff's 4th Amendment right to be free from excessive force when they entered his house and initially pointed their firearms at him when he was at the top of the steps, especially since they could not determine if he was armed at that point, until he was detained and handcuffed, they contest the report's finding that it is disputed as to whether plaintiff's right was violated after defendants allegedly continued to point seven guns at him when he was handcuffed and being removed from his house into a patrol car, which lasted "a few minutes." Leonard merely testified that he believed when plaintiff was at the top of the steps this was "probably" the only time weapons were pointed at him. Coffman did not directly address whether defendant officers continued to point their guns at plaintiff when he was being taken out of his house, rather he only discussed why officers were apprehensive when entering plaintiff's house and how he feared that plaintiff had rigged something to blow up in the house due to his barricade of kitchen chairs and the extreme heat in the house. Coffman also stated that after plaintiff was detained and handcuffed officers "got him right out of the house." Nonetheless, Coffman did not address whether officers continued to point several guns at plaintiff while he was being taken out of his house, i.e., the relevant issue. Nor is there any claim that plaintiff made

any threatening actions after he was handcuffed and being taken out of his house.

Thus, even though defendants contend that plaintiff has not submitted any other evidence to contradict the testimony of Leonard and Coffman, the testimony of these two officers are not sufficient to show that defendants are entitled to qualified immunity on the stated excessive force claim. In any event, plaintiff cites to evidence in his Doc. 123 reply brief to support his 4th Amendment excessive force claim regarding the officers' pointing of their weapons at him after he was handcuffed and being questioned. The plaintiff's cited evidence in his reply brief as well as the evidence discussed in the report are sufficient to deny the officers' contention that they are entitled to qualified immunity at the summary judgment stage since there are simply too many disputed facts regarding the stated claim.

Further, the cases upon which defendants rely in their objections, (Doc. 110 at 19-21), are distinguishable since the report agrees with the cited cases that the use of the SWAT team and the pointing of multiple guns at plaintiff while he was being apprehended, detained, and handcuffed in his house, i.e., while gaining control of plaintiff and effecting his arrest, did not violate plaintiff's 4th Amendment right. As the report discusses, it was not a violation of plaintiff's rights when the officers pointed their weapons at him when he was at the top of the steps in his house until they gained control over him and handcuffed him to protect their safety. Also, it is not the force

12

that was used to effectuate plaintiff's arrest when the officers entered his house that is at issue. Nor is it of any moment that there was only limited physical force used on plaintiff while he was being arrested and that he was not injured. As the report finds, the evidence is disputed as to whether defendant officers continued to point seven guns at plaintiff after he was handcuffed and then while he was being taken out of his house. In fact, in his brief in support of his objections, (Doc. 113 at 12), plaintiff states that "[d]efendants did much more than merely point guns at [him] while he was handcuffed", and that "[t]hey interrogated him using their weapons and the fact that he was helplessly h[a]ndcuffed as a means of physical and psychological torture." In his complaint, (Doc. 1 at 15), the plaintiff alleges that after he came down the steps in his house defendants apprehended him, handcuffed him and patted him down twice for weapons, and that when he was lead backwards into his kitchen, despite the fact that he did not resist or threaten to use any force, "Defendants Leonard and/or Ledger, to face at least four (4) officers, including Defendant Officers, with various firearms equipped with barrel lights, pointed at him, with an additional three (3) Defendant Officers pointing firearms at him from another direction." (*See also* plaintiff's complaint, Doc. 1 at 20-24). Also, as mentioned, plaintiff details supporting evidence in his reply brief. (Doc. 123).

If such facts are established at trial, it does not appear that a reasonable officer under the stated circumstances after plaintiff was secured

could perceive plaintiff as a threat and would be justified in continuing to point several guns at him. There is also insufficient evidence as to the exact amount of time that the guns were pointed at plaintiff after he was handcuffed and posed no threat, and then while he was being escorted out of his house despite defendants' contention that it was only "momentarily." Plaintiff presents evidence in his reply to controvert defendants' contention of the time frame. This issue must also be resolved at trial. The report also cites to ample precedent to support its recommendation that defendants should not be given qualified immunity with respect to the stated claim.

The court has reviewed the evidence, including the extensive citation to testimony in plaintiff's underlying criminal case and his own testimony, as he quotes in his reply brief, (Doc. 123), and concurs with the report that at this stage of the case it will be for the jury to determine whether defendants did in fact continue to point their firearms at plaintiff when he no longer posed any threat or possibility of escape regardless of how short a time period defendants allege and, if so, whether this conduct violated his 4th Amendment right.

"At summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion", and "[i]n qualified immunity cases, this usually means adopting ... the plaintiff's version of the facts." Noble, 112 F.Supp. 3d at 226 (internal citations omitted).

14

The court has reviewed Judge Mehalchick's report and defendants' objections to it as well as plaintiff's reply, and finds that defendants are not entitled to qualified immunity regarding plaintiff's stated excessive force claim. *See* Thompson v. Howard, 679 Fed.Appx. 177, 181 (3d Cir. Feb. 17, 2017) ("To decide if a use of force was 'objectively reasonable[,]' we consider the 'severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officer or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'") (citations omitted). Thus, in the instant case, to be entitled to qualified immunity, a reasonable officer would have had to believe that pointing his weapon at plaintiff after he was detained and handcuffed, under the circumstances at the time of plaintiff's arrest, did not violate plaintiff's clearly established 4th Amendment right. *See also* Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012) ("To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.").

As the Third Circuit in Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006), explained:

> The use of excessive force is itself an unlawful "seizure" under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004). In deciding whether challenged conduct constitutes excessive force, a court must determine the objective "reasonableness" of the challenged conduct, considering "'the severity of the crime at issue, whether the suspect poses an immediate threat

to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Carswell, 381 F.3d at 240 (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). In evaluating reasonableness, the court must take into consideration the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397, 109 S.Ct. 1865. Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene." Id. at 396, 109 S.Ct. 186.

The Court in Couden, id. at 497, then stated that the factors relevant to an excessive force claim and the analysis of whether the 4th Amendment right in question was clearly established is "well-recognized," as it described above. (citing Sharrar, 128 F.3d at 822; cf. Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005) (noting that a "reasonable officer would be guided by the Sharrar factors in determining whether to use overwhelming force in a given situation," and that "if an officer applies the Sharrar analysis in an unreasonable manner, he is not entitled to qualified immunity")). In the Couden case, the Court found that when four officers jumped the plaintiff and used mace, pointed several guns pointed at his head, and used handcuffs this "constituted excessive force against a cooperative and unarmed subject most of these factors—including the potential threat posed by the suspect, whether the suspect was resisting arrest, armed, or

attempting to flee, and the ratio of officers to suspects—clearly suggested the use of a low level of force." *Id.* The Court then concluded that "based on relevant precedent at the time, a reasonable officer would not have believed that the level of force used against [plaintiff] was legal under the circumstances." *Id.* (citing Baker v. Monroe Twp., 50 F.3d 1186, 1193 (3d Cir. 1995) (finding liability for excessive force where officers pointed guns at and handcuffed several members of a family where there was "simply no evidence of anything that should have caused the officers to use the kind of force they are alleged to have used"); Robinson v. Solano County, 278 F.3d 1007, 1015 (9th Cir. 2002) (en banc ) (finding the law sufficiently established in 2002 to recognize the "general principle that pointing a gun to the head of an apparently unarmed suspect during an investigation" can constitute excessive force, "especially where the individual poses no particular danger")).

The conclusion of the report that defendants are not entitled to qualified immunity is correct since it is not clear if a reasonable officer would have believed that he and the other officers were in serious danger as they continued to point their guns at plaintiff when he was handcuffed, under their complete control, and did not make any threatening actions, through the time that he was being removed from his house.

Additionally, the standard for qualified immunity is whether a reasonable officer in defendant's position would have believed he was

17

violating a clearly established constitutional right by pointing his firearm at a person who was arrested on a misdemeanor charge and handcuffed, and who was not posing any danger. *See* Thompson, 679 Fed.Appx. at 181.

Given the disputed facts as to whether defendant officers continued to point their guns at plaintiff after he was handcuffed and no longer posing a substantial risk of serious injury to the officers, given the dispute over the time period the guns were pointed at plaintiff, and given plaintiff's lack of threatening behavior and lack of any attempts to flee after his arrest, the court cannot say if it was objectively reasonable for police officers to continue pointing their firearms at plaintiff, under all of the circumstances of this case, and if "every reasonable official would [have understood] that what he [was] doing violate[d]" plaintiff's 4th Amendment rights. Reichle, 566 U.S. 658, 132 S.Ct. at 2093.

Thus, under the totality of the circumstances and based on Supreme Court and Third Circuit precedent, defendants are not entitled to summary judgment since there are disputed facts as to whether they continued to point their guns at plaintiff after he was handcuffed, and if so, as to whether it was objectively reasonable for them to do so. *See* Thompson*, supra; see also* Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) ("Summary judgment is appropriate if no reasonable juror could conclude that [the plaintiff's] clearly established rights were violated.").

As such, the court finds that defendants are not shielded from liability based on qualified immunity with respect to plaintiff's stated excessive force claim, (Count I, second claim) and that they are not entitled to summary judgment on this basis.[7]

Defendants also contend that the <u>Monell</u> claim against the City should also be dismissed since "the report does not identify the existence of a custom or policy other than the single instance of Donahue's arrest", and

---

[7]In his complaint, (Doc. 1 at 12-13), the plaintiff states that according to the Police Incident Report, (Doc. 1, Ex. F), the following defendants were involved in his arrest at his house on August 21, 2012: Det. Lt. Kenneth Zipovsky; Officer Frank V. DeAndrea; Lt. John Leonard; Lt. David Coffman; Det. Lt. Jason Zola; Det. Cpl. Darryl Ledger; Patrolman Kevin Wagner; Cpl. Kirk Wetzel; Sgt. Mark Zola; Patrolman Thomas King; and Patrolman William Gallagher. However, Count I of plaintiff's complaint, his 4th Amendment excessive force claim regarding the pointing of weapons at him when he was handcuffed, that will proceed to trial, is asserted against all defendants, including the Doe defendants. Since discovery is over and since plaintiff has had more than ample time in this 2014 case and still has not identified his John and Jane Doe defendants, they will be dismissed by the court, *sua sponte*, pursuant to Fed.R.Civ.P. 21. *See* <u>Blakeslee v. Clinton County</u>, 336 Fed.Appx. 248 (3d Cir. 2009) (citing <u>Adams v. City of Camden</u>, 461 F.Supp.2d 263, 271 (D.N.J. 2006) (holding that, after a reasonable period of discovery has passed, "[i]t is appropriate, before proceeding to trial, to eliminate [the] fictitious defendants from [an] action under Fed.R.Civ.P. 21.")).

Also, while plaintiff asserts his 4th Amendment claim in Count I (second claim) that will proceed against all 11 defendants, at trial he will be required to produce evidence regarding the personal involvement of each defendant with respect to this claim. *See* <u>Rodriguez v. Thomas</u>, 209 F.Supp.3d 618, 630-31 (M.D.Pa. March 6, 2018). The court further notes that plaintiff indicates that seven guns were pointed at him despite his inclusion of all 11 defendants with respect to the stated claim.

since "[t]his single occurrence does not support a claim of municipal liability against the City of Hazleton." The court finds that the report correctly determines that plaintiff's excessive force claim arising from defendants pointing their firearms at him after he was handcuffed against the City of Hazelton based on <u>Monell</u> should also proceed to trial since disputed facts exist as to whether the City had any municipal policy regarding such alleged conduct by defendant officers. No doubt that "[w]here a failure to train claim is alleged based on a single incident, the complaint must contain allegations that policymakers 'kn[e]w to a moral certainty' that the alleged constitutional deprivation would occur and the need for further training 'must have been plainly obvious.'" <u>Ezeibe v. City of York</u>, 2020 WL 1922632, *3 (M.D.Pa. April 21, 2020) (citing <u>City of Canton</u>, 489 U.S. at 390 n.10); *see also* <u>Noble v. City of Camden</u>, 112 F.Supp.3d 208, 221 (D.N.J. June 29, 2015) ("For a §1983 claim of failure to train or supervise municipal employees, the plaintiff must show that the failure to provide training or supervision amounted to "'deliberate indifference' to the rights of persons with whom the employee will come into contact", and "[d]eliberate indifference may be demonstrated by showing a pattern of violations which puts the municipal employee on notice that a new program is necessary; or a single incident violation where the need for training was patently obvious." (internal citations omitted).

Further, plaintiff's complaint, (Doc. 1 at 18-19, 22-23), contains several specific instances of the City's alleged policies and customs which

violated his 4th Amendment rights with respect to his claim in Count I. (See also Doc. 123 at 52-53). Also, in liberally construing the *pro se* plaintiff's instant contentions, he appears to claim that the City failed to train defendant officers regarding the use of weapons after a person is arrested and handcuffed and, failed to train defendants not to point their weapons at a handcuffed person while he is in custody and being interrogated.

Also, since the plaintiff's stated 4th Amendment excessive force claim will proceed against the defendant officers, i.e., since disputed facts exist as to whether there was a violation of his rights by defendant officers employed by the City, this claim will be allowed to proceed against the City.

The court has also reviewed plaintiff's objections to Judge Mehalchick's report and his brief in support insofar as the report recommends that defendants be granted summary judgment on plaintiff's other claims. Since plaintiff largely rehashes his arguments in opposition to defendants' summary judgment motion which the judge already considered, the court will not repeat the findings of the report regarding the plaintiff's claims on which defendants will be granted summary judgment. Additionally, the report correctly analyzes the evidence and the case law with respect to the plaintiff's four claims for which it is recommended that defendants be granted summary judgment, Count I (first claim), and Counts II-IV. The court adopts the report in this regard and shall not repeat its discussion. (Doc. 105 at 6-24).

Also, insofar as plaintiff seeks in his objections, (Doc. 111 at 10), for this court to "*sua sponte"* overturn Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994), which bars his malicious prosecution claim in Count II, this court clearly cannot overturn Supreme Court precedence and declare it unconstitutional. Moreover, the Third Circuit has consistently applied the Heck termination rule to cases within this Circuit similar to plaintiff's case in which he was convicted of an underlying criminal charge and then failed to get his conviction overturned in his state court appeals, and this court is bound to follow them. *See* Curry v. Yachera, 835 F.3d 373 (3d Cir. 2016).

Next, the court considers plaintiff's objections to the report's recommendation that his discovery motions should be denied.

It has been noted that "[t]here is particularly broad deference given to a magistrate judge's discovery rulings." Farmers & Merch. Nat'l Bank v. San Clemente Fin. Grp. Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997) (citing Toth v. Alice Pearl, Inc., 158 F.R.D. 47, 53 (D.N.J. 1994); Republic of Philippines v. Westinghouse Elec. Corp., 132 F.R.D. 384, 386-87 (D.N.J. 1990), *aff'd*, 949 F.2d 653 (3d Cir. 1991)). Thus, a district court may only overrule a magistrate judge's decision in a non-dispositive discovery dispute "if the decision is clearly erroneous or contrary to law, or if the Magistrate Judge abused h[er] discretion." Scott Paper Co. v. U.S., 943 F. Supp. 501, 502 (E.D. Pa. 1996) (citations omitted). "In making this determination, the Court

may consider only the evidence presented to the Magistrate Judge." Id. (citing Haines v. Liggett Grp., Inc., 975 F.2d 81, 91 (3d Cir. 1992).

The court finds that the report correctly concludes that plaintiff's motions to compel, (Docs. 72 & 75), and his motion for sanctions, (Doc. 90), should be denied. As such, the court will not repeat the sound reasoning which led Judge Mehalchick to her conclusions regarding these discovery motions, particularly since defendants are entitled to summary judgment with respect to all of plaintiff's claims except for the above stated 4th Amendment excessive force claim in Count I (second claim).

## IV.    CONCLUSION

The court has reviewed the recommended reasons for granting the summary judgment motion of defendants, (Doc. 80), as to all of plaintiff's claims, Count I (first claim, 4th Amendment excessive force claim arising from use of SWAT-like team), Counts II, III and IV,  except for his second 4th Amendment excessive force claim in Count I (regarding the pointing of defendants' guns at plaintiff after he was handcuffed), presented by Judge Mehalchick in her report, (Doc. 105). Because the court agrees with the sound reasoning that led Judge Mehalchick to the conclusions in her report and finds no clear error in the record, the court will **ADOPT** the report in its entirety. The court will **GRANT** defendants' summary judgment motion as to all of plaintiff's stated claims in Counts I-IV, except for the second claim in

Count I against all of the named individual defendants and the City of Hazelton. Plaintiff's motions to compel, (Docs. 72 & 75), and his motion for sanctions, (Doc. 90), will be **DENIED**. The court will also **OVERRULE** defendants' objections, (Doc. 109), and plaintiff's objections, (Doc. 111), to Judge Mehalchick's report. Further, as noted, the John and Jane Doe defendants will be dismissed from this case *sua sponte* by the court pursuant to Fed.R.Civ.P. 21. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 3, 2020**
14-1351-01

24